IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION


RUTHIE STOTT,                              :

      Plaintiff,                          :

vs.                                        :       CA 2:08-0579-C

MICHAEL J. ASTRUE,                         :
Commissioner of Social Security,

      Defendant.                          :


## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action, pursuant to 42 U.S.C. §§ 405(g) and
1383(c)(3), seeking judicial review of a final decision of the Commissioner
of Social Security denying her claim for disability insurance benefits.  The
parties have consented to the exercise of jurisdiction by the undersigned,
pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court.  (Doc. 17.)
Upon consideration of the administrative record, Plaintiff's brief, as
supplemented, the Commissioner's brief, as supplemented, and the parties'
arguments made at the July 1, 2009 hearing before the Court, it is
determined that the Commissioner's decision denying benefits should be
reversed and remanded for further proceedings not inconsistent with this
decision.[1]

---

[1] Any appeal taken from this memorandum opinion and order shall be made to the
Eleventh Circuit Court of Appeals, as the parties have previously agreed.  (Doc. 16.)

Plaintiff primarily alleges disability from a work-related back injury suffered on September 19, 2001, along with other disorders of the lumbar spine, diabetes, hypertension, adjustment disorder with depressed mood, and anxiety.  (Doc. 1, p. 2; Doc. 12, p. 1.)  The Administrative Law Judge (ALJ) made the following relevant findings:

> **3.  The claimant has the following severe impairments: disorders of the lumbar spine, diabetes, hyprtension, adjustment disorder with depressed mood, and obesity (20 C.F.R. §§ 404.1520(c)).**
>
> **4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).**
>
> Although the claimant has the severe impairment(s) listed above, the impairments, or combination of impairments, do not meet or medically equal the specific criteria for any impairment listed in Appendix 1, Subpart P, Regulations No. 4.  This finding is supported by the medical opinions of the State agency and consultative physician, all of whom considered the relevant listings.
>
> The limitations of the claimant do not satisfy the terms of listing 1.04 for disorders of the back.  The claimant is not so functionally limited and the evidence does not support the required medical findings required by listing 1.04 such as a condition that results in the compromise of a nerve root with evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in psuedoclaudication established by findings on appropriate medically acceptable imaging [sic] and manifested by chronic pain and weakness.
>
> The claimant's mental impairment does not meet or medically equal the criteria of listing 12.04.  In making this finding, the

2

undersigned has considered whether the "paragraph B" criteria are satisfied.  To satisfy the "paragraph B" criteria, the mental impairment must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration.  A marked limitation means more than moderate but less than extreme.  Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks.

A State [sic] agency psychiatric review dated March 28, 2006 concludes that the claimant's mental condition is not severe (Exhibit B7F).  After carefully considering the testimony and objective medical evidence, the undersigned finds that in activities of daily living, the claimant has mild restriction.  The claimant reported to a State [sic] agency examiner in March of 2006 that she cannot cook a proper meal but does light household chores and reads (Exhibit B4F, p. 2).

In social functioning, the claimant has mild difficulties.  The claimant reported to a State [sic] agency examiner in March of 2006 that she lives with her grandson and gets along average [sic] with family members.  She was cooperative with the State [sic] agency examiner at that time (Exhibit B4F, p. 1).

With regard to concentration, persistence[,] or pace, the claimant has moderate difficulties.  The claimant testified that she reads about an hour per day, but has trouble with concentration.  At a State [sic] agency examination[,] the claimant was able to adequately answer questions regarding memory, information, calculations, abstract thinking, similarities and differences, and judgment (Exhibit B4F, p. 2-3).

As for episodes of decompensation, the claimant has experienced no episodes of decompensation.

Because the claimant's mental impairment does not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, the "paragraph B" criteria are not satisfied.

The undersigned has also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria. The claimant does not meet the requirements of listing 12.04C because the claimant does not have a medically[-]documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following: repeated episodes of decompensation, each of extended duration; or a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

The limitations identified in the "paragraph B" and "paragraph C" criteria are not a residual functional capacity assessment[,] but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p). Accordingly, the undersigned has translated the above "B" and "C" criteria findings into work-related functions in the residual functional capacity assessment below.

**5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant can lift 10**

**pounds occasionally, can sit for 6 hours of an 8-hour workday, can stand and/or walk for 2 hours in an 8-hour workday, and needs a sit/stand option after 15 minutes. The claimant can do occasional bending and reaching above shoulder level; and can do no keeling,** [sic] **crouching, squatting, climbing stairs, and work** [sic] **near heights or moving machinery.  The claimant requires simple, routine, unskillled work.**

In making this finding, the undersigned considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p.  The undersigned also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p[,] and 06-3p.

.   .   .

The claimant testified that she has a drivers' [sic] license but only [sic] drives to go to church.  She stated that she might drive once monthly.  The claimant noted that she reads the [B]ible, novels, and magazines for about an hour a day.  The claimant reported that she has back pain at a level of "9" on a scale of 1 to 10, leg pain, uncontrolled hypertension, diabetes, blurred vision, high cholesterol, and depression[,] but takes care of her personal hygiene.  The claimant noted that she has to lie down after taking her medication and relies on her sister to prepare major meals.  The claimant testified that she can sit for 15 minutes at a time, is able to stand, can walk short distances, uses a cane to ambulate, and can lift 10 to 12 pounds.  The claimant reported that she has trouble bending and is unable to squat.

After considering the evidence of record, the undersigned finds that the claimant's medically[-]determinable impairments could reasonably be expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence[,] and limiting effects of

5

these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment for the reasons explained below.

The medical record does not support the claimant's allegations of limitations.  The medical record shows that the claimant has a history of back pain, hypertension, diabetes, high cholesterol, and depression (Exhibit B1F; B2F).  The claimant stopped working much earlier than her amended alleged onset date, due to back pain from lifting a patient, for which she received a $150,000.00 settlement.  She has undergone conservative treatment for her back pain, with no surgery or emergency room treatment.

During the time period in question[,] the claimant has weighed from about 229 through 280 pounds.  She is 5 feet 6 inches tall (Exhibit B2F, p. 10; B3F, p. 15) with a body mass index of 37 through 45.2, which is classified as obesity by the National Institutes of Health (Clinical Guidelines on the Identification, Evaluation, and Treatment of Overweight [sic] and Obesity in Adults, NIH Publication No. 98-4083).  While the levels of obesity described by the NIH do not correlate with any specific degree of functional loss, obesity can cause or contribute to impairments in the musculoskeletal, respiratory, and cardiovascular body systems and must be considered [in order] to determine if it alone or in combination with other impairments [sic] significantly limits an individual's physical or mental ability to do basic work activities. (SSR 02-1p).

A report of a neurological consultation dated September 1, 2005 notes that the claimant reported back pain with radiation into her legs and some bowel distress incontinence.  An examination showed decreased pinprick on the left outer leg but normal muscle tone and bulk, 5/5 muscle strength bilaterally except for the left [sic] that was 4+, and normal gait (Exhibit B3F, p. 10).

Treatment notes dated September 6, 2005 show that the claimant was taking medication for her back pain as well as medication for her diabetes.  She was instructed at that time to

6

watch her diet and exercise (Exhibit BB2F, p. 10).  A MRI
report dated September 12, 2005 reports left paracentral disc
herniation with no spinal stenosis, L4-5, central herniation at
L3-4 with acquired spinal stenosis, and disc space
degeneration at L4-5 and L3-4 (Exhibit B3F, p. 14).

Notes dated November 29, 2005 indicate that the claimant had
a good range of motion (Exhibit B2F, p. 11).  Results of
testing dated October 17, 2005 reveal left L4-5 radiculopathy
(Exhibit B3F, p. 6-7).  The claimant underwent physical
therapy for her condition (Exhibit B3F).  Bassam Maaz, M.D.,
reported on October 27, 2005, and February 14, 2006 that the
claimant was undergoing physical therapy and had increased
range of motion and decreased tenderness (Exhibit B3F, p.
15-16, 37).

Dr. Upfall has issued a physical residual functional capacity
assessment (Exhibit B10F), which apparently consists of two
different residual functional capacity forms.  The first three
pages refer to one residual functional capacity form (Exhibit
B10F, p. 1-3), and the last three pages apparently refer to a
different residual functional capacity form [signed] by Dr.
Upfall in February of 2007 (Exhibit B10F, p. 4-6).  On page 2
of Exhibit B10F, Dr. Upfall appears to indicate that the
claimant's impairments are not consistent with her symptoms
(see #12 of the questionnaire).  On page four of Exhibit B10F,
however, Dr. Upfall indicated the opposite.  Similarly, on
page 2 of the exhibit, Dr. Upfall indicates that emotional
factors do not contribute to the severity of the claimant's
symptoms.  Again, on page 4, Dr. Upfall indicates the
opposite, indicating that the claimant has "marked
limitations" in dealing with work stress.  On [p]age 3 of the
exhibit, Dr. Upfall indicates that the claimant can sit from less
than two hours in an 8[-]hour day, up to at least six hours in
an 8-hour day.  On page 4, on the other hand, Dr. Upfall
indicates that the claimant can sit only [sic] less than 2 hours
in an 8-hour day.  While there are some consistencies between
these pages of the residual functional capacity forms, these
are just some of the inconsistencies.  Given the internal
inconsistencies, the undersigned attributes only limited weight
to this [e]xhibit.

7

Contrary to the claimant's statement that Dr. Upfall prescribed a cane, in the residual functional capacity assessment[,] Dr. Upfall indicates that the claimant does not need a cane for standing/walking (Exhibit B10F, p. 3).

On March 20, 2006[,] the claimant underwent a mental health assessment for [s]tate agency [sic].  Although the claimant is prescribed Prozac, the claimant has no history of any psychiatric treatment.  She was diagnosed with adjustment disorder with depressed mood and a Global Assessment of Functioning [score] of 50 (Exhibit B4F).  A GAF from 41 to 50 is indicative of "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupation, or school functioning (e.g., no friends, unable to keep a job)" (DSM-IV, 4th Ed., p. 32).  If the claimant were having the extent of depression as alleged, one would reasonably expect the claimant to have stated same to treating sources– even if the treating sources were treating the claimant for other reasons.  The undersigned thus assigns only limited weight to the low GAF assessment by State agency [sic] in this case, as the record does not support such a finding.

As previously indicated, claimant asserts a "9" level of back pain.  A report of a consultative evaluation dated March of 2006 indicates that the claimant "is over-reacting for the pain and seems to be malingering" as to her back pain (Exhibit B5F, p. 3).  A physical examination at that time confirmed that the claimant had a normal gait and had a functional capacity of walking 1 to 2 miles with and without a cane; could move about without difficulty; had no spasm, wasting, or deformity of the spine; was able to walk on heels and toes well, squat and arise from a squatting position completely; and could walk steadily without a cane (Exhibit B5F, p. 2).

Given the inconsistencies between the testimony of the claimant and the medical record, the undersigned assigns great weight to the treatment notes and only limited weight to the testimony of the claimant.  Further, the remaining residual functional capacity addresses the exertional demands that might exacerbate the claimant's symptoms and the location,

duration, frequency, and intensity of the symptoms.

The medical records and the testimony of the claimant describing her limitations demonstrate that such limitations will not interfere with the ability of the claimant to function independently, appropriately, effectively, and on a sustained basis. The undersigned has considered the claimant's allegations and has found them inconsistent with the objective medical evidence in the record. The claimant's testimony is not well supported by the objective medical evidence in the record and therefore [is] not entitled to controlling weight. Consideration has also been given [to] the reports of the state agency medical consultants as well as to other treating, examining, and non-examining medical sources. After carefully considering the testimony and objective medical evidence in the record, the undersigned finds the claimant somewhat more physically limited than initially [sic] determined by [the] [s]tate agency (Exhibit B9F) and thus assigns that assessment only limited weight.

**6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565).**

The claimant has past relevant work as a certified nurse's aide (semi-skilled /listed at medium and performed at the heavy level of physical exertion) (Exhibit B7E). The vocational expert testified that a hypothetical individual of the claimant's age, with the same education, residual functional capacity, and vocational history, [sic] cannot perform that past work. After carefully considering the testimony and objective medical evidence, the undersigned finds that the claimant is unable to perform past relevant work.

.    .    .

**10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c) and 404.1566).**

9

.    .    .

If the claimant had the residual functional capacity to perform the full range of sedentary work, a finding of "not disabled" would be directed by Medical-Vocational Rule 201.21. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations.  To determine the extent to which these limitations erode the unskilled sedentary occupational base, the Administrative Law Judge [sic] asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity.  The vocational expert testified that given all of these factors[,] the individual would be able to perform the requirements of representative occupations such as surveillance system monitor (1,000 jobs), inspector (1,000 jobs), and packager (1,000 jobs).

Pursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles, including its companion publication, the Selected Characteristics of Occupations defined in the Revised Dictionary of Occupational Titles (SCO).

Based on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant has been capable of making a successful adjustment to other work that exists in significant numbers in the national economy.  A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule.

**11.  The claimant has not been under a disability, as defined in the Social Security Act, from September 12, 2005[,] through the date of this decision (20 CFR 404.1520(g)).**

(Tr. 16-22.)  The Appeals Council denied Mrs. Stott's request for review,

and so the hearing decision became the final decision of the Commissioner

of Social Security.  (Tr. 6.)

## DISCUSSION

In all Social Security cases, the claimant bears the burden of proving that she is unable to perform her previous work.  *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986).  In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education, and work history.  *Id*. at 1005.  Once the claimant meets this burden, it becomes the Commissioner's burden to prove that the claimant is capable, given her age, education, and work history, of engaging in another kind of substantial gainful employment which exists in the national economy.  *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985.)

The task for the Magistrate Judge is to determine whether the Commissioner's decision to deny the claimant benefits on the basis that she retains the residual functional capacity (RFC) to perform sedentary work and that there were other jobs in the national economy that she could perform is supported by substantial evidence.  (Doc. 14, p. 7.)  Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28

11

L.Ed.2d 842 (1971).  As the Eleventh Circuit itself has stated, when determining whether substantial evidence exists, "we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision."  *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

In this case, Plaintiff contends that the following major errors were made: (1) the residual functional capacity (RFC) assessment that the ALJ assigned to Ms. Stott is not supported by the opinion of any treating or examining physician, and (2) the ALJ's determination that Plaintiff can perform those jobs listed by the vocational expert (VE) is not supported by substantial evidence because of incorrect and improper testimony from the VE.  (Doc. 12, p. 1.)  Of these two assignments of error, Plaintiff's claim that the ALJ erred in his reliance on faulty VE testimony demands the Court's initial consideration.

The ALJ assigned Ms. Stott the following residual functional capacity (RFC):

> After careful consideration of the entire record, the undersigned finds that the claimant has the [RFC] to perform sedentary work as defined in 20 C.F.R. 404.1567(a)[,] except [that] the claimant can lift 10 pounds occasionally, can sit for 6 hours of an 8-hour workday, can stand and/or walk for 2 hours in an 8-hour workday, *and needs a sit/stand option after 15 minutes*.  The claimant can do occasional bending and reaching above shoulder level; and can do no keeling, [sic] crouching, squatting, climbing stairs, and work [sic] near

> heights or moving machinery.  The claimant requires simple,
> routine, unskillled work.

(Tr. 18) (emphasis added).  At the hearing, the ALJ posed the following

hypothetical to the VE:

> With respect to lifting and carrying, that would be limited to a
> maximum of ten pounds and only on an occasional basis.  She
> can sit for approximately six hours out of an eight-hour day.
> She can stand/walk for about two hours of an eight-hour day,
> *and she will need to have a sit/stand option after about 15
> minutes*. . . I'd also like to add the fact that she is overweight.
> . . In terms of bending and reaching above shoulder level, she
> can do that only on an occasional basis.  She can do no work
> involving kneeling, crouching[,] or squatting.  Also[,] she can
> do no work where she would be involved in climbing stairs.
> Also[,] she could do no work where she would be in the
> vicinity of heights or moving machinery.  And lastly, because
> of the problems that she has with pain, there would be
> difficulties in concentration, persistence or pace, and also[–]
> as a result of the side effects of her medication[–] she would
> have to be limited to jobs entailing no more than simple,
> routine, unskilled work.

(Tr. 413-14) (emphasis added).  After asking the VE if Ms. Stott could

return to her past work, the ALJ asked if there existed any work in the

national economy that she could perform, to which the VE responded that

"[a]t the sedentary, unskilled range there are jobs," adding that "[s]ome

examples would be surveillance system monitor" and "simple inspecting."

(Tr. 414-15).  When the ALJ then asked: "With respect to the jobs that

you've enumerated in terms of their requirements, are those requirements

consistent with the requirements that are set for these jobs in the <u>Dictionary</u>

13

of Occupational Titles?," the VE responded with a simple "[y]es."  (Tr.

415).

This answer, however, is incorrect, as the DOT does *not* provide for

a sit/stand option for any of the jobs identified.[2]  SSR 83-12 specifically

states:

> In some disability claims, the medical facts lead to an
> assessment of RFC which is compatible with the performance
> of either sedentary or light work[,] except that the person
> must alternate periods of sitting and standing.  The individual
> may be able to sit for a time, but must then get up and stand or
> walk for awhile before returning to sitting.  *Such an
> individual is not functionally capable of doing . . . the
> prolonged sitting contemplated in the definition of sedentary
> work . . . or the prolonged standing or walking contemplated
> for most light work.*

*Id*. at *4 (emphasis added).  SSR 83-12 goes on, perhaps redundantly, to say

that "[u]nskilled types of jobs are particularly structured so that a person

cannot ordinarily sit or stand at will."  *Id*.  Furthermore, SSR 00-4p

unequivocally states:

> Occupational evidence provided by a VE or VS generally
> should be consistent with the occupational information
> supplied by the DOT.  When there is an apparent unresolved
> conflict between VE or VS evidence and the DOT, the
> adjudicator must elicit a reasonable explanation for the
> conflict before relying on the VE or VS evidence to support a
> determination or decision about whether the claimant is

---

[2] It is perhaps worth noting that a VE in a separate case, *Turk v. Astrue*, 2008 WL 341302
(M.D.Fla. Feb. 5, 2008), correctly testified that low sedentary work is "performed on a consistent
rate requiring an individual to maintain sitting for up to two hours at a time."  *Id*. at *8.

> disabled.  At the hearings level, as part of the adjudicator's
> duty to fully develop the record, the adjudicator will inquire,
> on the record, as to whether or not there is such consistency.
>
> Neither the DOT nor the VE or VS evidence automatically
> "trumps" when there is a conflict.  The adjudicator must
> resolve the conflict by determining if the explanation given by
> the VE or VS is reasonable and provides a basis for relying on
> the VE or VS testimony rather than on the DOT information.

*Id*. at *2.  This was clearly not done in this case.  After receiving the

contradictory testimony from the VE about the availability of sedentary-

level jobs despite Ms. Stott's rather extreme sit/stand limitation, the ALJ

simply stated "[o]kay" and moved to the next hypothetical.  (Tr. 415).

In *Gibson v. Heckler*, 762 F.2d 1516 (11th Cir. 1985), the Court noted

that after a claimant has been held unable to return to his or her past work,

the burden of proof shifts to the government to establish by a preponderance

of the evidence that the claimant is able to perform some other job that

exists in substantial numbers in the national economy.  *Id*. at 1518 (citing

*Cowart v. Schweiker*, 662 F.2d 731, 736 (11th Cir. 1981)).  Interestingly, the

plaintiff in *Gibson* was significantly *less* limited regarding the necessity of a

sit/stand option than Ms. Stott: as opposed to Ms. Stott, who has been

determined to require a sit/stand option after 15 minutes of hypothetical

employment, the plaintiff in *Gibson* had the limitation that he could neither

sit nor stand for more than four hours in an eight-hour workday.  *Id*. at

1518.  Because of this, the Court stated that it was "clear that the general

15

category of sedentary jobs does not remotely resemble the category of jobs existing in substantial numbers in the national economy which can accommodate [the plaintiff's] *individual* [RFC]." *Id*. at 1521 (emphasis in original).  Tellingly, the VE in *Gibson* "uncovered *no* [sedentary] jobs amenable to a sit/stand option" in the DOT.  *Id*. (emphasis in original).

Simply put, the Commissioner cannot carry his burden of proving that there are jobs existing in significant numbers in the national economy that Ms. Stott could perform by pointing to faulty VE testimony.  Here, the VE incorrectly ascribed two narrow categories of sedentary occupations as available to the claimant, although the sit/stand requirements of each– as indicated by the DOT's own proscriptions and the VE testimony given in other cases from this circuit– actually preclude her performing them. Furthermore, the ALJ has wholly failed to present the "reasonable explanation" mandated by SSR 00-4p while relying on VE testimony that directly conflicts with the DOT.  Thus, the ALJ's determination that Plaintiff can perform those sedentary jobs identified by the VE is not supported by substantial evidence.  There is no evidence to establish that Plaintiff can perform the requirements of any sedentary job as representatively listed in the DOT.

The Commissioner has not satisfied his fifth-step burden of proving that Plaintiff is capable of performing other work existing in significant

16

numbers in the national economy and therefore, the Commissioner's decision denying claimant benefits is **REVERSED and REMANDED** for further proceedings not inconsistent with this decision.

Having come to the above decision, it is unnecessary for this Court to further delve into the operations of this case, and so the undersigned ends his inquiry here. *See Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985) ("Because the misuse of the expert's testimony alone warrants a reversal, we do not consider the appellant's other claims.").

## CONCLUSION

It is **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff benefits be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g), *see Melkonyan v. Sullivan*, 501 U.S. 89, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991), for further proceedings not inconsistent with this decision. The remand pursuant to sentence four of § 405(g) makes the plaintiff a prevailing party for the purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412, *Shahala v. Schaefer*, 509 U.S. 292, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993), and terminates this court's jurisdiction over this matter.

**DONE AND ORDERED** this 11th day of September, 2009.

s/WILLIAM E. CASSADY
UNITED STATES MAGISTRATE JUDGE

17